IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANOVAN MAURICE POOLER,

        Plaintiff,

    v.

CITY OF PORTLAND and
ABBAS MIRE,

        Defendants.

Case No. 3:24-cv-01715-AB

OPINION & ORDER

Juan C. Chavez
PO Box 5248
Portland, OR 97208

    Attorney for Plaintiff

Elizabeth C. Woodard
City of Portland, Office of the City Attorney
1221 SW 4th Avenue, Ste 430
Portland, OR 97204

    Attorney for Defendants

1 – OPINION & ORDER

**BAGGIO, District Judge:**

Plaintiff Danovan Maurice Pooler brings this case against Defendants City of Portland and Portland Police Officer Abbas Mire. Plaintiff brings two claims under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights and two tort claims under Oregon law—negligence and intentional infliction of emotional distress ("IIED"). Am. Compl. ¶¶ 58–81, ECF No. 35. Defendants move to dismiss, for a second time,[1] Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss ("Defs.' Mot.") 1–2, ECF No. 36. For the reasons explained below, the Court denies Defendants' Motion.

## BACKGROUND

On May 24, 2024, Plaintiff was admitted to Oregon Health & Science University ("OHSU") for "surgery to treat a gunshot wound to his lower left back." Am. Compl. ¶ 8. After surgery, Plaintiff "had a surgical wound from about the bottom of his sternum to below his belly button" and "had internal [stitches] and staples on the outside." *Id.* ¶ 10. Plaintiff's condition post-operation made movement difficult, and Plaintiff received assistance from nursing staff to walk to the bathroom. *Id.* ¶ 11. After Plaintiff's operation, "OHSU had been administering anti-constipation medication." *Id.* ¶ 12.

Plaintiff remained at OHSU from May 24, 2024, through June 2, 2024. *Id.* ¶ 9. While recovering from his injury and subsequent surgery, "Plaintiff was held in custody at OHSU on an outstanding parole warrant." *Id.* ¶ 13. On June 2, 2024, "Plaintiff was medically cleared for discharge from OHSU." *Id.* ¶ 14. Defendant Mire "was assigned to guard Plaintiff at OHSU" that day, and was also "responsible for transporting Plaintiff from OHSU to the Multnomah County

---

[1] The Court dismissed Plaintiff's original Complaint, with leave to amend, for failure to state claims under the First, Fifth, Eighth, and Fourteenth Amendments. *See* Opinion & Order ("O&O"), ECF No. 22.

Detention Center ("MCDC") following his discharge." *Id.* ¶¶ 15–16. Plaintiff alleges that, "[p]rior to being watched by Defendant Mire, [Plaintiff] had been watched over by other PPB officers" and "[t]hose officers acted reasonably and allowed [Plaintiff] to go to the bathroom when needed and access nursing staff unimpeded." *Id.* ¶ 17. Because Plaintiff was "handcuffed to the hospital bed[,]" Plaintiff would need to be uncuffed and escorted to use the restroom facilities. *Id.* ¶ 21.

From roughly 7:30 am to 11:00 am, and while Defendant Mire was assigned to guard Plaintiff at OHSU, Plaintiff "repeatedly requested to use the restroom for a bowel movement." *Id.* ¶¶ 18–19. Defendant Mire "refused to allow [Plaintiff] to use the restroom on multiple occasions during this approximately 3.5-hour period." *Id.* ¶ 20. Plaintiff then "used the emergency nurse request button on his bed." *Id.* ¶ 22. "The nurse arrived and tried to convince Defendant Mire to uncuff [Plaintiff] so he could go to the bathroom[,]" and "Defendant Mire refused." *Id.* Plaintiff alleges that "[t]he nurse felt she had no other options left, and told [Plaintiff] that she would try to return later and try to convince Defendant Mire to relent." *Id.* Plaintiff then "defecated on himself in his bed because Defendant Mire refused to uncuff him, requiring the nurses to return and clean him up." *Id.* ¶ 23. After defecating on himself, Plaintiff also alleges that Defendant Mire refused his nursing staff's request to uncuff Plaintiff so he could use the restroom "to shower or clean his surgical wound." *Id.* ¶¶ 27–28. Plaintiff alleges that this was a "humiliating and degrading" experience for him and that he "suffered physical discomfort [and] abdominal pain" because of being denied restroom access for roughly three and a half hours. *Id.* ¶¶ 24–25. He also alleges having to "refuse his morning meal because of this stomach discomfort." *Id.*

3 – OPINION & ORDER

"When it was time to transport Plaintiff from OHSU, Defendant Mire ordered Plaintiff to get out of the hospital bed." *Id.* ¶ 30. Before leaving OHSU, Plaintiff had to use the restroom again, and "[Plaintiff] and the nurses requested that Defendant Mire allow [Plaintiff] to go to the bathroom. Defendant Mire told them that 'there was no time.'" *Id.* ¶ 32. Defendant Mire then "required Plaintiff to get out of bed without any assistance despite [Plaintiff's] recent surgery and compromised physical condition." *Id.* ¶ 35. While leaving OHSU, Plaintiff "was only dressed in a hospital gown, which was loosely tied in the back, and sheer hospital underwear." *Id.* ¶ 34. Plaintiff was not wearing any socks, sandals, or shoes. *Id.* While walking to the exit, Plaintiff "could feel the pain of his surgical wound" and could feel the wound "rip and tear around the belly button." *Id.* ¶¶ 38–39. Plaintiff alleges that "[a] nurse and a passing doctor clearly recognized that [Plaintiff] was in pain and distress" and "stopped to address Defendant Mire in an attempt to convince him into letting [Plaintiff] get a wheelchair or, at minimum, gripped socks." *Id.* ¶ 40. Plaintiff alleges that Defendant Mire refused to allow these accommodations for Plaintiff. *Id.* The same OHSU doctor and one nurse continued to walk with Plaintiff and Defendant Mire as they were exiting OHSU, "all the while pleading with [Defendant] Mire." *Id.* ¶ 41.

When Plaintiff exited OHSU, there were no officers or vehicles to pick him up. *Id.* ¶ 42. Instead, Defendant Mire told Plaintiff that "he would have to walk across the gravelly parking lot and across the street outside OHSU to get to [Defendant Mire's] police vehicle." *Id.* Plaintiff alleges that "[a]fter everything he had already endured, being now forced to walk across the parking lot in the state he was in finally broke [Plaintiff, and h]e began to cry." *Id.* ¶ 43. The nurse who had been following "ran inside to get [Plaintiff] a wheelchair[,]" but Defendant Mire "took this as an opportunity to rush [Plaintiff] through the parking lot without interference from

OHSU medical staff." *Id.* ¶ 44. Plaintiff alleges that he had to walk barefoot and handcuffed across a gravelly parking lot, in his medical gown, and in the rain. *Id.* ¶¶ 36, 45–47. While walking across gravel, Plaintiff "stepp[ed] on a particularly sharp rock" and "[felt] the skin break on his heel." *Id.* ¶ 47. Plaintiff alleges that "[t]he shock of the pain caused him to move suddenly[,]" and shortly after "[h]e could feel his surgical wound tear at around the belly button region." *Id.* "A passerby in a black vehicle stopped his vehicle to ask [Plaintiff] if he was okay[, and] Defendant Mire told the driver to move along." *Id.* ¶ 48.

When Plaintiff reached Defendant Mire's vehicle, "Defendant Mire made [Plaintiff] enter the vehicle without assistance." *Id.* ¶ 49. Plaintiff, "still handcuffed, barefoot, wearing only a hospital gown, and suffering from his recent surgery[,]" had to lift himself up into an "elevated SUV" and consequently "felt pain in and around his belly button but could not assess the extent of the injury." *Id.* ¶¶ 49–50. While in Defendant Mire's vehicle, Plaintiff defecated on himself again. *Id.* ¶ 52.

On arrival to MCDC, Plaintiff "exit[ed] the vehicle without assistance[, which] caused further pain and bleeding from [Plaintiff's] surgical wound." *Id.* ¶ 53. Although having defecated on himself while in Defendant Mire's vehicle, Plaintiff "was not given a shower for some hours." *Id.* ¶ 54. When he was finally able to go to the bathroom, he inspected his wounds and "saw blood all over his abdominal region and on his heel as a result of stepping on the rock in the parking lot." *Id.* ¶ 55. Plaintiff "was forced to clean his blood and feces himself." *Id.*

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

5 – OPINION & ORDER

the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id.* at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Defendants move to dismiss Plaintiff's § 1983 claims alleging violations of his Fourteenth Amendment rights "because [Defendants] did not deprive [P]laintiff of a protected interest when [Defendant] Mire transported him" to MCDC. Defs.' Mot. 1. Defendants also move to dismiss Plaintiff's tort claims.[2] *Id.* at 2. Defendants also seek to incorporate by reference various documents, some of which the Court incorporated in addressing Defendants' prior Motion to Dismiss. *Id.* at 3; O&O 2 n.1. The Court first denies Defendants' request to

---

[2] While Defendants initially argue that "[P]laintiff fails to state a claim for negligence[,]" Defs.' Mot. 2, Defendants do not explain why. In their reply brief, however, Defendants argue, "Plaintiff properly construed Defendants' Motion; [D]efendants agree [P]laintiff states a prima facie case of negligence." Defs.' Reply 7, ECF No. 44. Defendants' remaining argument for dismissing Plaintiff's negligence claim is that it is based on the same set of facts as his § 1983 claims and IIED claim. Defs.' Mot. 11–12.

6 – OPINION & ORDER

incorporate by reference various documents and then denies the remainder of Defendants'

Motion.

## I.        Incorporation by Reference

Defendants ask the Court to allow the incorporation by reference of "documents

previously attached and discussed in Defendants' First Motion to Dismiss." Defs.' Mot. 3; *see*

*also* First Woodard Decl. Ex. 1 (police report), ECF No. 13-1; First Woodard Decl. Ex. 2

(Measure 11 Secret Indictment), ECF No. 13-2. Defendants also ask the Court to incorporate

Plaintiff's MCDC Intake Records. Defs.' Mot. 3; *see also* Second Woodard Decl. Ex. 1

(Plaintiff's MCDC intake record), ECF No. 37-1. The Court denies Defendants' request to

incorporate by reference the cited documents.

When ruling on a Rule 12(b)(6) motion, a court may consider certain documents that are

not attached to the complaint as part of the pleading "if the plaintiff refers extensively to the

document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342

F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002

(9th Cir. 2018) ("[I]ncorporation-by-reference . . . treats certain documents as though they are

part of the complaint itself."). This doctrine "prevents plaintiffs from selecting only portions of

documents that support their claims, while omitting portions of those very documents that

weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. A court, however, may not consider

documents which merely support a defense; "[o]therwise, defendants could use the doctrine to

insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.*

Here, Plaintiff's Amended Complaint never refers to the documents Defendants seek to

incorporate by reference. The Court also does not find that these documents form the basis of

7 – OPINION & ORDER

Plaintiff's claims. For these reasons, the Court declines to incorporate by reference Defendants' cited documents.

## II.     Fourteenth Amendment

Defendants argue that Plaintiff fails to state a Fourteenth Amendment claim under either of his two theories (deliberate indifference and pre-trial punishment). Defs.' Mot. 5–8. Even if Plaintiff states a claim under either of his two theories, Defendants also argue that Defendant Mire is entitled to qualified immunity. *Id.* at 8–10. Plaintiff argues that he states a claim. Pl.'s Opp'n 15–20, ECF No. 42. He also argues that Defendant Mire is not entitled to qualified immunity. *Id.* at 21–23. The Court declines to find that Defendant Mire is entitled to qualified immunity at this stage of the litigation, but the Court does find that Plaintiff sufficiently alleges his § 1983 claims.

### A.     Qualified Immunity

Defendants argue that Defendant Mire is entitled to qualified immunity.[3] Defs.' Mot. 8–10. The Court finds that Plaintiff's Amended Complaint contains sufficient allegations of a harmful act that would violate a clearly established constitutional right. Therefore, the Court does not find that Defendant Mire is entitled to qualified immunity at this stage of the litigation.

The Ninth Circuit has emphasized that qualified immunity is not generally resolved on a motion to dismiss. *See Keates v. Koile*, 883 F.3d 1228, 1234, 1243 (9th Cir. 2018) (reversing the district court's dismissal of the plaintiffs' claim on the basis of qualified immunity and noting

---

[3] Defendants also appear argue on the first time in their reply brief that Defendant Mire is entitled to discretionary immunity. Defs.' Reply 6. The Court considers Defendants' mention of discretionary immunity to be an error because, while the heading of the argument says, "Officer Mire is entitled to discretionary immunity[,]" Defendants' argument appears to be an argument about qualified immunity. *See id.* To the extent that Defendants also argue that Defendant Mire is entitled to discretionary immunity for the first time on reply, the Court declines to address that issue.

8 – OPINION & ORDER

that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making"). In deciding whether to address the issue of qualified immunity on a motion to dismiss, "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).

Here, Plaintiff alleges that Defendant Mire engaged in the following conduct: refusing to allow Plaintiff to use the bathroom on several occasions, Am. Compl. ¶¶ 21–22, 32; refusing to allow Plaintiff to clean himself "for some hours" after defecating on himself, *id.* ¶¶ 27–28, 54; refusing to allow Plaintiff to use a wheelchair or wear gripped socks, *id.* ¶ 40; making Plaintiff "walk across the gravelly parking lot and across the street outside OHSU to get to Defendant's police vehicle[,]" *id.* ¶ 42; and making Plaintiff get in and out of an "elevated SUV" without assistance, resulting in further damage to his surgical wound, *id.* ¶¶ 49–50, 53. Plaintiff also cites caselaw explaining that the law was clearly established at the time of Defendant Mire's conduct that the denial of bathroom access violates an inmate's Eighth Amendment rights. *See Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) ("[Inmate plaintiffs] also testified that they did not receive adequate access to toilets to avoid soiling themselves, and they were not allowed to clean themselves thereafter. If believed, this evidence would establish deprivations sufficiently serious to satisfy the objective component of an Eighth Amendment claim."). Because "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that [the Supreme Court has] held are enjoyed by convicted prisoners[,]" *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), and because the Court finds that Plaintiff's Amended Complaint contains at least one allegation of a harmful act that would violate a clearly established constitutional

9 – OPINION & ORDER

right, the Court declines to find that Defendant Mire is entitled to qualified immunity at the motion-to-dismiss stage of this litigation.

B.    Deliberate Indifference

Defendants argue that Plaintiff fails to state his deliberate indifference claim. Defs.' Mot. 5–7. Plaintiff argues that Defendants were deliberately indifferent in (1) ignoring Plaintiff's post-operative pain, (2) denying Plaintiff bathroom access, and (3) requiring Plaintiff to walk in a hospital gown to Defendant Mire's police vehicle. Pl.'s Opp'n 17–19. The Court finds that Plaintiff sufficiently pleads his deliberate indifference theory of liability.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc). "Under both clauses, the plaintiff must show that the prison officials acted with 'deliberate indifference.'" *Id.* at 1068. "[I]n the context of claims of inadequate medical care, . . . the Eighth Amendment and Fourteenth Amendment standards [are] precisely the same." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021).

The elements of a pretrial detainee's Fourteenth Amendment claim of inadequate medical care against an individual officer are as follows:

> (i) [T]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). With respect to the second element, examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the

10 – OPINION & ORDER

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . ." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1125 (citation modified) (quoting *Castro*, 833 F.3d at 1071). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Defendants argue that Plaintiff's Amended Complaint only contains threadbare recitations of harm and are "are insufficient to sustain a claim under the Fourteenth Amendment . . . ." Defs.' Mot. 6. The Court disagrees. As explained below, the Court finds that Plaintiff sufficiently alleges each of the above four elements.

First, Plaintiff alleges various intentional decisions with respect to the conditions under which Plaintiff was confined. For example, Defendant Mire "refused to allow [Plaintiff] to use the restroom on multiple occasions during [an] approximately 3.5-hour period." Am. Compl. ¶ 20. Plaintiff then "used the emergency nurse request button on his bed." *Id.* ¶ 22. "The nurse arrived and tried to convince Defendant Mire to uncuff [Plaintiff] so he could go to the bathroom[,]" but "Defendant Mire refused." *Id.* While leaving OHSU, Plaintiff alleges that "Defendant Mire required Plaintiff to get out of bed without any assistance despite [Plaintiff's] recent surgery and compromised physical condition." *Id.* ¶ 35. Later, Defendant Mire told Plaintiff that "he would have to walk across the gravelly parking lot and across the street outside

11 – OPINION & ORDER

OHSU to get to [Defendant Mire's] police vehicle" even though Plaintiff was not wearing footwear. *Id.* ¶¶ 34, 42.

Second, Plaintiff sufficiently alleges that Defendants' actions put him at substantial risk of suffering serious harm. Plaintiff alleges that he "suffered physical discomfort, abdominal pain, and the indignity of defecating on himself." *Id.* ¶ 25. Plaintiff also alleges that throughout his walk to Defendant Mire's car, Plaintiff "could feel his fresh surgical wound begin to rip and tear around the belly button." *Id.* ¶ 39; *see also id.* ¶ 47 (while walking through the parking lot, "[Plaintiff] could feel his surgical wound tear at around the belly button region"). Another risk of harm allegedly occurred when Plaintiff had to walk across "parking lot gravel on his exposed feet." *Id.* ¶ 47. While walking on these rocks, he alleges that he failed to "maintain his balance while not stretching his surgical scar nor stepping on rocks." *Id.* Plaintiff also alleges that throughout his walk to Defendant Mire's car, an "OHSU doctor passerby followed Defendant Mire through the hallways and into the elevator, all the while pleading with [Defendant] Mire" to allow him to get a wheelchair or "gripped socks" to wear. *Id.* ¶¶ 40–41. This last allegation is consistent with Ninth Circuit caselaw finding that examples of risk—in the context of medical care—include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . ." *McGuckin*, 974 F.2d at 1059–60. Here, Plaintiff alleges that a medical professional observed and *did* comment that Plaintiff had a medical condition that, at the very least, was worthy of further attention.

Third, Plaintiff sufficiently alleges that Defendant Mire did not take reasonable available measures to abate the risks posed to Plaintiff. On several occasions, Plaintiff alleges that OHSU

12 – OPINION & ORDER

nurses and doctors not only offered, but "plead[ed]" with, Defendant Mire to allow them to attend to Plaintiff. *Id.* ¶ 41. Plaintiff alleges that one nurse "tried to convince Defendant Mire to uncuff [Plaintiff] so he could go to the bathroom[, and] Defendant Mire refused." *Id.* ¶ 22. After Plaintiff defecated on himself, Defendant Mire refused nursing staff's request to allow Plaintiff to use the restroom to "shower to clean and care for his surgical wound." *Id.* ¶¶ 27–28. Plaintiff next alleges that Defendant Mire again refused nurses' requests to allow Plaintiff to go to the bathroom before leaving the hospital. *Id.* ¶ 32. Plaintiff also alleges that at least one nurse and one doctor noticed Plaintiff's pain and distress and "stopped to address Defendant Mire in an attempt to convince him into letting [Plaintiff] get a wheelchair or, at minimum, gripped socks[,]" which Defendant Mire also refused. *Id.* ¶ 40. Plaintiff also alleges that when a nurse "ran inside to get him a wheelchair" before he had to walk across the gravelly parking lot, "Defendant Mire took this as an opportunity to rush [Plaintiff] through the parking lot without interference from OHSU medical staff." *Id.* ¶ 44. In all, Plaintiff sufficiently alleges that OHSU staff communicated to Defendant Mire about several reasonable available measures to abate risks to Plaintiff, and that Defendant Mire refused to make those measures available to Plaintiff.

Finally, Plaintiff alleges that Defendants' conduct caused his injuries. Plaintiff alleges that "[a]s a result of being denied restroom access for this extended period, Plaintiff suffered physical discomfort, abdominal pain, and the indignity of defecating on himself." *Id.* ¶ 25. Because he was forced to walk barefoot across a gravelly parking lot, "[u]pon stepping on a particularly sharp rock, [Plaintiff] could feel the skin break on his heel" and his "surgical wound tear at around the belly button region." *Id.* ¶ 47; *see also id.* ¶ 55 ("When [Plaintiff] was finally able to go to the bathroom and inspect his wounds, he saw blood all over his abdominal region and on his heel as a result of stepping on the rock in the parking lot.").

13 – OPINION & ORDER

Defendants argue that "[P]laintiff was under the care of OHSU at all material times prior to discharge[,]" and that "[t]he hospital, not [Defendant] Mire, chose what clothing was provided to plaintiff at discharge." Defs.' Reply 4–5. The Court disagrees. Plaintiff's Amended Complaint contains several allegations that support the inference that while OHSU was charged with Plaintiff's care, Defendant Mire prevented that care from reaching Plaintiff. *See, e.g.*, Am. Compl. ¶ 40 (Defendant Mire "refused" to allow OHSU staff to provide Plaintiff with gripped socks); *id.* ¶ 22 (Defendant Mire "refused" to let Plaintiff use the bathroom despite a nurse "tr[ying] to convince Defendant Mire[,]" leaving the nurse with "no other options"). Defendants' argument is even more unavailing with respect to the moments in which Plaintiff was allegedly in the sole care of Defendants at MCDC. After arriving at MCDC, Plaintiff alleges that he "was not given a shower for some hours" even though Defendant Mire told Plaintiff that "he would be able to use the bathroom and get a shower [at MCDC]." *Id.* ¶ 54.

In sum, the Court finds that Plaintiff sufficiently states a claim on his deliberate indifference theory of liability.

C.      Intended as Punishment

Defendants argue that "Plaintiff's allegations fail to establish that the purpose of [Defendant] Mire's conduct was to punish [Plaintiff]." Defs.' Mot. 7. Plaintiff argues that "[i]ntent to punish exists on these facts, but Plaintiff is not even required to allege subjective intent or motive to punish in a case like this." Pl.'s Opp'n 20. The Court finds that Plaintiff sufficiently alleges that Defendant Mire acted with an intent to punish.

A pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. While the government "may detain [an individual] to ensure his presence at trial and may subject him to the restrictions and conditions

of the detention facility[,]" the "conditions and restrictions" of that detention must not "amount

to punishment, or otherwise violate the Constitution." *Id.* at 536–37. On one hand, "if a particular

condition or restriction of pretrial detention is reasonably related to a legitimate governmental

objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. But "in the absence of

an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the

actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the

actions 'appear excessive in relation to that purpose.'" *Kingsley*, 576 U.S. at 398 (quoting *Bell*,

441 U.S. at 561). In other words, "if a restriction or condition is not reasonably related to a

legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose

of the governmental action is punishment that may not constitutionally be inflicted upon

detainees *qua* detainees." *Bell*, 441 U.S. at 539.

> Here, Plaintiff alleges that:

> Defendant Mire acted for the purpose of punishing [Plaintiff] for a crime no court
> of law had found him guilty of, as evinced by Defendant Mire's consistent refusal
> to allow [Plaintiff] reasonable access to the bathroom and by marching [Plaintiff]
> through OHSU a week after surgery in nothing but a hospital gown and sheer
> underwear, knowingly causing him pain and embarrassment in the process.

Am. Compl. ¶ 65. Additionally, Plaintiff alleges that Defendant Mire knew that his actions

caused pain and embarrassment for Plaintiff because of "several bystanders attempting to

intervene because [Plaintiff] was so visibly in distress . . . ." *Id.* ¶ 66.

Defendants argue that Defendant Mire's conduct was necessary because Defendant Mire

needed "to protect both the public and [Plaintiff] from any additional violence or retaliation."

Defs.' Mot. 8. But Defendants do not sufficiently explain how denying Plaintiff access to the

bathroom for three and a half hours was connected to the need to protect the public or Plaintiff,

*see* Am. Compl. ¶ 20, particularly in light of Plaintiff's allegation that "other PPB

officers . . . allowed [Plaintiff] to go to the bathroom when needed and access nursing staff

15 – OPINION & ORDER

unimpeded[,]" *id.* ¶ 17. Nor do Defendants explain how denying Plaintiff a wheelchair was connected to protecting the public. *See id.* ¶ 40. The Court also notes that it must accept as true Plaintiff's allegation that he recently went through a surgery which caused him to be in a "compromised physical condition" at the time of his transport to MCDC. *Id.* ¶ 35; *see also id.* ¶ 31 (Plaintiff alleging that he "had difficulty moving because of his back wound, his post-operative fatigue, incontinence, and surgical wound"). And even if such allegations were not taken as true, "where an individual is incarcerated before trial but has not been convicted of any crime, imposing adverse conditions during his detention as a means of deterring crimes is not permissible." *Demery v. Arpaio*, 378 F.3d 1020, 1031 (9th Cir. 2004).

Defendants also argue that Plaintiff's Amended Complaint contains contradictory allegations. For example, Defendants argue that Plaintiff's allegation that Defendant Mire appeared "annoyed and bored" is insufficient to establish that Defendant Mire intended to punish Plaintiff. Defs.' Mot. 7–8 (quoting Am. Compl. ¶ 21). But Defendants do not explain how Defendant Mire's alleged demeanor means that Defendant Mire necessarily lacked an intent to punish. Nor do Defendants directly respond to the specific allegations of Defendant Mire's conduct. *See* Am. Compl. ¶¶ 21–22 (refusing to allow Plaintiff to use the bathroom on several occasions); *id.* ¶¶ 27–28, 54 (twice refusing to allow Plaintiff to clean himself after defecating on himself); *id.* ¶ 40 (refusing to allow Plaintiff to use a wheelchair or wear gripped socks); *id.* ¶ 42 (making Plaintiff "walk across the gravelly parking lot and across the street outside OHSU to get to Defendant's police vehicle"); *id.* ¶¶ 49–50, 53 (making Plaintiff get in and out of an "elevated SUV" resulting in further damage to his surgical wound).

Accordingly, the Court finds that Plaintiff states a claim on his second "intent-to-punish" theory of liability.

16 – OPINION & ORDER

### III.    Tort Claims

Defendants argue that Plaintiff fails to state an IIED claim. Defs.' Mot. 12–16. Defendants also argue that Plaintiff failed to give notice of his tort claims within the statutory period and that Plaintiff improperly bases his state claims on the same set of facts as his § 1983 claims. *Id.* at 10–12. The Court finds that Plaintiff gave timely notice, that Plaintiff does not improperly base his negligence claim on the same set of facts as his other claims at this stage of the litigation, and that Plaintiff sufficiently states his IIED claim.

### A.    Notice Requirement

Defendants first argue that Plaintiff did not provide them with a timely tort claim notice. Defs.' Mot. 10–11. The Court disagrees.

The Oregon Tort Claims Act requires a plaintiff to give "[n]otice of claim . . . within 180 days after the alleged loss or injury." Or. Rev. Stat. § ("ORS") 30.275(2)(b). "A plaintiff may satisfy the notice requirement by 'formal notice,' 'actual notice,' or *commencement of an action by or on behalf of the claimant.*" *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 436 (9th Cir. 1997) (emphasis added) (quoting ORS 30.275(3)); *see also Cannon v. Or. Dep't of Just.*, 261 Or. App. 680, 682, 322 P.3d 601 (2014) (holding that "the action . . . shall be deemed to have been commenced upon the date on which the complaint in the action was filed" for notice purposes (quoting ORS 12.020(2)).

Here, Plaintiff challenges the actions of Defendants that occurred on June 2, 2024. *See* Am. Compl. ¶¶ 18–56 (allegations of facts on June 2, 2024). Because Plaintiff filed his original Complaint on October 9, 2024, Plaintiff gave notice by commencing this action within the prescribed 180-day timeline. *See* Compl., ECF No. 2.

17 – OPINION & ORDER

Defendants argue that Plaintiff fails the OTCA notice requirement because he did not originally allege tort claims under Oregon law. Defs.' Reply 7. But the Court does not infer from the plain language of the statute that Plaintiff had to allege a *tort* claim in his original Complaint. Nor do Defendants provide authority adopting their interpretation of the OTCA notice requirement. Thus, the Court does not find that Plaintiff needed to plead specific actions in tort in order overcome the notice requirement in ORS 30.275. *See Maney v. Oregon*, 729 F. Supp. 3d 1087, 1183 (D. Or. 2024)*, aff'd*, No. 24-2715, 2025 WL 1794110 (9th Cir. June 30, 2025) ("[T]he Court rejects [the defendants'] argument that [the plaintiffs'] claims are now barred because [the plaintiffs] have added new facts and 'theories' to their complaint."). Accordingly, the Court finds that Plaintiff meets his burden of providing notice under the OTCA by commencing this action within 180 days of his alleged injuries.

B.      Same Set of Facts

Defendants argue that the Court must dismiss Plaintiff's negligence claim because "[e]stablished case law in this district states that a negligence claim cannot be based on the same set of facts as a § 1983 claim." Defs.' Mot. 11. The Court disagrees that it must dismiss Plaintiff's negligence claim at this stage of the litigation.

In support of their position, Defendants cite *Shilo v. City of Portland*, among many other cases, in which the court held that a "negligence claim . . . should not be founded on the same facts that give rise to the § 1983 claim." No. CV 04-130-AS, 2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005). But *Shilo* and many of the other cases which Defendants cite resolved pending motions for *summary judgment*. And as one of Defendants' cited cases held, the "[*Shilo*] standard does not apply at the initial pleading stage." *Rodriguez v. City of Portland*, No. 09-850-KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009). Because this case is still at the initial

18 – OPINION & ORDER

pleading stage, the Court declines to dismiss Plaintiff's negligence claim because it may be founded on the same set of facts as his § 1983 claims.

Defendants also argue that Plaintiff's negligence claim should be dismissed because it is based on the same facts as Plaintiff's IIED claim. Defs.' Mot. 12. Defendants do not offer authority supporting this position. Indeed, "at the initial pleading stage, Rule 8 permits an allegation of negligence in one count and an allegation of intentional action, based on the same facts, in another." *Rodriguez*, 2009 WL 3518004, at \*2. The Court also declines to dismiss Plaintiff's negligence claim because it may be founded on the same set of facts as his IIED claim.

C.      Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff fails to allege facts to state an IIED claim. Defs.' Mot. 12–16. Plaintiff argues that he does. Pl.'s Opp'n 24–27. The Court agrees with Plaintiff.

"To prevail on a claim for IIED, a plaintiff must show that: '(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *Davoodian v. Rivera*, 327 Or. App. 197, 213, 535 P.3d 309 (2023) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995)). As to the intent requirement, "[b]ecause proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort largely turns on . . . whether a defendant's conduct is sufficiently outrageous." *Id.* (quoting *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008)). As to the third element, "whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances." *Id.* (citation modified). Additionally, "whether the offensiveness

19 – OPINION & ORDER

of the conduct 'exceeds any reasonable limit of social toleration' is 'a judgment of social standards rather than of specific occurrences.'" *Id.* at 213–14 (quoting *House*, 218 Or. App. at 358–59).

In addition to the three elements discussed above, "[t]he relationship between the parties has particular bearing on potential characterization of the conduct as extreme or outrageous." *Delaney v. Clifton*, 180 Or. App. 119, 130, 41 P.3d 1099 (2002). A plaintiff must generally allege that a defendant's position or role "imposes on the defendant a greater obligation to refrain from subjecting [the plaintiff] to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* (quoting *Williams v. Tri-Met*, 153 Or. App. 686, 689–90, 958 P.2d 202 (1998)). "[T]he lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim." *Id.* A relationship between a government officer and a citizen may satisfy the relationship requirement if the alleged relationship "shapes the interpersonal dynamics of the parties."[4] *House*, 218 Or. App. at 360.

As to the first element, Defendants argue that "[P]laintiff alleges no facts from which a jury could reasonably infer that [Defendant] Mire acted with an intent to cause [P]laintiff severe emotional distress." Defs.' Mot. 13. But in lieu of allegations of intent, Plaintiff's allegations focus on what Defendant Mire did. *See* Am. Compl. ¶¶ 21–22, 32 (repeatedly refusing to allow Plaintiff to use the bathroom); *id.* ¶¶ 27–28, 54 (refusing to allow Plaintiff to clean himself after

---

[4] Defendant does not argue that Plaintiff fails to allege the requisite relationship. But the Court finds that Plaintiff sufficiently alleges the existence of a relationship between Defendant Mire and Plaintiff. Plaintiff alleges that "Defendant Officer Mire, a Portland Police Officer employed by Defendant City of Portland, was assigned to guard Plaintiff at OHSU" on June 2, 2024. Am. Compl. ¶ 15. He also alleges that "Defendant Mire was responsible for transporting Plaintiff from OHSU to [MCDC] following his discharge." *Id.* ¶ 16. He also alleges that other officers who watched Plaintiff "allowed [Plaintiff] to go to the bathroom when needed and access nursing staff unimpeded." *Id.* ¶ 17.

20 – OPINION & ORDER

defecating on himself); *id.* ¶ 40 (refusing to allow Plaintiff to use a wheelchair or wear gripped socks); *id.* ¶¶ 42, 45–46 (making Plaintiff walk in the rain and in his hospital gown "across the gravelly parking lot and across the street outside OHSU to get to Defendant's police vehicle"); *id.* ¶¶ 49–50, 53 (making Plaintiff get in and out of an "elevated SUV" without assistance, resulting in further damage to his surgical wound); *see also Davoodian*, 327 Or. App. at 213 ("Because proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of [IIED] largely turns on whether a defendant's *conduct* is sufficiently outrageous." (citation modified) (emphasis added)). Plaintiff alleges that OHSU nurses and doctors advised Defendant Mire of Plaintiff's needs multiple times, and Defendant Mire consistently refused to allow Plaintiff to access to the bathroom, use a wheelchair while exiting the hospital, and access other accommodations. *See id.* ¶¶ 22–23, 27–28, 40–41. As a result, Plaintiff experienced emotional distress in the form of embarrassment, anxiety, and "breaking down into tears . . . ." *Id.* ¶¶ 65, 80. At this preliminary stage, the Court finds that Plaintiff alleges that Defendant Mire engaged in conduct was substantially certain to cause Plaintiff severe emotional distress. *Delaney*, 180 Or. App. at 132.

As to the second element, the Court does not read Defendants' Motion as meaningfully disputing whether Defendant Mire's conduct caused Plaintiff emotional distress.[5] As a result, the Court does not discuss it.

---

[5] Defendants do argue that Plaintiff fails to plead "facts from which it is possible to infer that severe emotional distress was a certain or substantially certain result of his alleged action." Defs.' Mot. 13. But this argument is different from arguing that Defendant Mire's conduct *caused* Plaintiff's emotional distress. Indeed, this language of "certain or substantially certain result" is often used by Oregon courts to describe the burden of establishing the intent element, not causation. *See Delaney*, 180 Or. App. at 132 ("The intent element of the claim . . . is satisfied if a defendant either 'desires to inflict severe emotional distress, or knows that such distress is certain, or substantially certain, to result from his conduct.'" (quoting *McGanty*, 321 Or. at 550)).

21 – OPINION & ORDER

As to the third element, Defendants argue that Plaintiff's allegations of Defendant Mire's conduct "do not constitute an extraordinary transgression sufficient to support an IIED claim, particularly given the nature of [Plaintiff's] custody." Defs.' Mot. 16. The Court disagrees. In addition to sufficiently alleging the details of Defendant Mire's conduct, Plaintiff also alleges numerous instances in which hospital staff asked Defendant Mire to allow Plaintiff to use the bathroom, to use a wheelchair, to wear gripped socks, and to travel to Defendant Mire's car with additional accommodations. *See* Am. Compl. ¶¶ 22–23, 27–28, 40–41. While walking across the gravelly hospital parking lot, Plaintiff also alleges that "[a] passerby in a black vehicle stopped his vehicle to ask [Plaintiff] if he was okay[, and] Defendant Mire told the driver to move along." *Id.* ¶ 48. Because many bystanders either pleaded directly with Defendant Mire or made remarks about Plaintiff's suffering as he was travelling to Defendant Mire's car, the Court finds that Plaintiff plausibly alleges this final element.

Defendants argue that Plaintiff's "factual allegations are dissimilar to any conduct that the Oregon Courts have found to meet the outrageous conduct element of IIED[,]" and cite several cases with facts that are fairly different from this case.[6] Defs.' Mot. 14–15. But as Defendants explain, "[d]etermination of whether the alleged conduct is an extraordinary

---

[6] For example, Defendants cite *Williams*, 153 Or. App. at 688, in which a bus driver "berated, insulted, and belittled" a disabled passenger, questioned her disability, questioned her right to have an assistance dog, and questioned her right to pay a reduced fee in front of other passengers. *See also Clifford v. City of Clatskanie*, 204 Or. App. 566, 570, 575, 131 P.3d 783 (2006) (defendant police officer falsely told classmates of deceased teenager that teenager had called the police on a party); *Richer v. Poisson*, 137 Or. App. 157, 160–61, 903 P.2d 932 (1995) (defendant–landlord graffitied over plaintiffs' store window, harassed plaintiffs' customers and employees, set the heat too high, sent customers to competitors, placed paper over business signs, and made harassing telephone calls to plaintiffs); *Checkley v. Boyd*, 170 Or. App. 721, 725, 14 P.3d 81 (2000) (defendant allegedly engaged in a pattern of brainwashing plaintiff's mentally disabled brother to falsely believe that plaintiff had stolen from him, was neglecting his basic needs, was holding him prisoner, and was persecuting him for his religious beliefs, among other allegations).

22 – OPINION & ORDER

transgression is a fact-specific inquiry." *Id.* at 14; *accord Davoodian*, 327 Or. App. at 213 ("Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances." (internal quotation marks omitted)). Thus, the Court declines to dismiss Plaintiff's IIED claim on the basis that the facts here are different from Defendants' cited IIED cases.

Defendants also argue that "OHSU staff had the ability to help [Plaintiff] with any toileting or hygiene needs at bedside." Defs.' Mot. 13. But in reading Plaintiff's Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff sufficiently precludes this argument by alleging that the attending nurse "had no other options left" because of Defendant Mire's refusal to allow Plaintiff to use the bathroom. Am. Compl. ¶ 22. In sum, the Court finds that Plaintiff sufficiently alleges an IIED claim under Oregon law.

## CONCLUSION

The Court DENIES Defendants' Motion to Dismiss for Failure to State a Claim [36].

IT IS SO ORDERED.

DATED this  17th  day of April, 2026.

AMY M. BAGGIO
United States District Judge

23 – OPINION & ORDER